```
              UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
                    Alexandria Virginia


METROPARK USA, INC.,            )
                                )
     Plaintiff,                 )
                                )
     v.                         )  Civil Action No. 1:10cv87
                                )
METROPARK.NET,                  )
                                )
       Defendant.               )
```

### REPORT AND RECOMMENDATION

This matter came before the Court pursuant to plaintiff's Motion for Default Judgment. (Dkt. No. 13.) After a representative for the defendant domain name failed to plead, respond to plaintiff's Motion, or appear at the hearing on plaintiff's Motion for Default Judgment, the Court took plaintiff's Motion under advisement.

### I. INTRODUCTION

On January 28, 2010, plaintiff Metropark USA, Inc. ("plaintiff") filed a Verified Complaint against domain name <metropark.net> ("Domain Name") seeking injunctive relief under the AntiCybersquatting Protection Act, 15 U.S.C. § 1125(d)(2) ("ACPA").

Plaintiff has moved for default judgment and requests the Court enter a permanent injunction directing that ownership of the Domain Name be transferred to plaintiff. (Mem. in Supp. of

Default J. 17.)

### A. Jurisdiction and Venue

This Court has *in rem* jurisdiction over the Domain Name pursuant to 15 U.S.C. § 1125(d)(2)(C) because the registry for the Domain Name is located in this District.[1] (Compl. ¶ 3.) This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 because it arises under a federal law. (Id. ¶ 8.)

Venue is appropriate in this District under 28 U.S.C. §§ 1391(a) and 15 U.S.C. § 1125(d)(2)(C) because the Domain Name is maintained by a domain name registry located within this District. (Id. ¶ 10.)

### B. Service of Process

The ACPA allows the owner of a mark to file an *in rem* civil action against a domain name and instructs plaintiffs how to provide sufficient notice of such an action.[2] In the instant

---

[1] Specifically, Domain Name <metropark.net> is registered with VeriSign, Inc. ("VeriSign"), which is located in Dulles, Virginia. (Compl. ¶ 7.)

[2] 15 U.S.C. § 1125(d)(2) provides, in pertinent part:

(A) The owner of a mark may file an in rem civil action against a domain name ... if

(i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) of this section; and

(ii) the court finds that the owner –

case, plaintiff transmitted the Complaint to the Domain Name's registrant in accordance with 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa). Additionally, on February 4, 2010, plaintiff filed a Motion for Service by Publication or Order Confirming Service. (Dkt. No. 4.) On February 18, 2010, this Court entered an Order to Publish Notice, directing that plaintiff publish a copy of the Court's Order in *The Washington Times*. (Dkt. No. 7.) On February 26, 2010, a copy of the Court's February 18, 2010 Order was published pursuant to the Order. (Affidavit of Amna Arshad ¶ 3.) Accordingly, the requirements of 15 U.S.C, § 1125(d)(2)(A)(ii)(II)(bb) have also been satisfied. Service of process is deemed complete pursuant to 15 U.S.C. § 1125(d)(2)(B).

**C. Grounds for Entry of Default**

---

(I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

  (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by –

    (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided the registrant to the registrar; and

    (bb) publishing notice of the action as the court may direct promptly after filing the action.

(B) The actions under subparagraph (A)(ii) shall constitute service of process.
15 U.S.C. § 1125(d)(2)(A)-(B).

The Court's February 4, 2010 Order authorizing plaintiff to publish notice of the action stated that "[a]ny answer or other response to the Complaint should be filed ... within twenty (20) days from the date of publication of this Order in *The Washington Times*." (See Dkt. No. 7.) To date, no party with an interest in the Domain Name has appeared or otherwise participated in the proceedings and the twenty-day window has long expired. (Mot. for Default J. at 1.)

The Clerk entered default against the Domain Name on March 25, 2010. (Dkt. No. 12.) Plaintiff filed its Motion for Default Judgment on March 29, 2010 (Dkt. No. 13.) and a hearing was held before the undersigned Magistrate Judge on July 2, 2010. When no representative for the Domain Name appeared at the hearing on plaintiff's Motion, the Court took the Motion under advisement to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that plaintiff has established the following facts.[3]

Plaintiff, a Delaware corporation, is the owner of the trademark at issue and the registrant of <metroparkusa.com>, the domain name consisting of the trademark at issue. (Compl. ¶¶ 4,

---

[3] The pleadings include the Verified Complaint (Dkt. No. 1), plaintiff's Motion for Default Judgment ("Mot. for Default J.") (Dkt. No. 13), and the memorandum submitted in support thereof (Dkt. No. 14).

4

13, 14.) Plaintiff is in the business of operating retail stores selling a wide variety of goods, including men's and women's clothing and accessories. Plaintiff offers goods of others in such stores, as well as goods branded with plaintiff's trademarks. Plaintiff's retail stores are located in prominent shopping malls around the country, accessible by millions of people each year. (Compl. ¶ 12.)

Plaintiff adopted and has offered its goods and services under the mark METROPARK since at least September 2004, and it continues to offer such goods and services under the METROPARK trademark (hereinafter the "Mark"). (Compl. ¶ 13.) Plaintiff operates an online store selling men's and women's clothing and accessories, located at the domain name <metroparkusa.com>. (Compl. ¶ 14.) Plaintiff has devoted and continues to devote substantial time, effort and resources to the development and acquisition of goodwill in its Mark. Plaintiff spends million of dollars promoting its goods and services under the Mark. (Compl. ¶ 15.) As a result of plaintiff's substantial efforts and extensive sales for more than five years of substantially exclusive use in the fields of retail sales and clothing, the Mark has become famous in the minds of consumers and extremely strong, and consumers have come to associate the Mark with plaintiff, viewing the Mark as designating the source of the goods and services offered by plaintiff. (Compl. ¶ 16.)

10.)

On October 2, 2009, a registrant registered Domain Name <metropark.net> (the "registrant"). (Compl. ¶ 18.) Subsequent to registration, the Domain Name has been used commercially by registrant to advertise the sale of men's and women's clothing and accessories. (Compl. ¶ 19.) Visitors to the Domain Name are presented with links to commercial sources other than plaintiff where they can find goods and services that are substantially identical to and competitive with the goods and services plaintiff offers under the Mark. (Compl. ¶¶ 19-20.)

The registrant has been involved in numerous past actions in which the registrant was accused of engaging in a pattern of bad-faith registration and use of domain names. (Compl. ¶ 29.) Registrant has lost numerous proceedings in which it was accused of engaging in a bad-faith registration and use of domain names. (Compl. ¶ 30.) Registrant is the current registrant of multiple domain names that mimic famous trademarks of third-parties, such as <bankofamericaa.com>, <dicksportinggood.com>, <abcnewschicago.com> and <officedeppotcom.com>. (Compl. ¶ 31.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Plaintiff contends that the unauthorized registration and continued use of the Domain Name violates 15 U.S.C. § 1125(d), which protects the owners of U.S. trademarks and prohibits the registration of Internet domain names that are confusingly

similar to any trademark or dilutive of any famous trademark. (Compl. ¶ 44.) Plaintiff further alleges Trademark Infringement, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and False Designation of Origin, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.[4] (Compl. ¶¶ 58, 68.)

Plaintiff asserts that it has suffered, and continues to suffer, irreparable harm to its reputation and goodwill as a result of the registration and ongoing use of the Domain Name and, thus, seeks a permanent injunction transferring ownership of the Domain Names to plaintiff. (Id. ¶¶ 42, 53, 64.)

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted. Before entering default judgment, however, the court must evaluate the plaintiff's complaint to ensure that the complaint properly states a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate plaintiff's claims against the standards of Fed. R. Civ. P. 12(b)(6).

Pursuant to the Lanham Act, "[t]he owner of a mark may file an in rem civil action against a domain name in the judicial

---

[4] Though plaintiff claims a violation of 15 U.S.C. § 1114 in its Complaint, plaintiff does not seek relief under this claim in its Motion for Default Judgment. The Court therefore limits its analysis to plaintiff's claims under 15 U.S.C. § 1125.

district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if (1) the domain name violates any right of the owner of a mark . . . protected under subsection [1125](a) or [1125](c)." 15 U.S.C. § 1125(d)(2)(A). Plaintiff alleges that the Domain Name is confusingly similar to plaintiff's Mark and have been registered with the bad faith intent of profiting unlawfully from plaintiff's Mark. (Compl. ¶ 38.) According to plaintiff, such registration and use of the Domain Names violates 15 U.S.C. §§ 1125(d).

In an *in rem* action, the remedies are limited to forfeiture, cancellation or transfer of the Domain Names to the owner of the Mark. 15 U.S.C. § 1125(d)(2)(D). In order to be entitled to the relief, plaintiff need only prove a violation of either Section 1125(a) or 1125(c). Section 1125(a) reads as follows:

> (a) Civil action
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or

geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.
15 U.S.C. § 1125(a)(1).[5]

The undersigned finds plaintiff has sufficiently demonstrated that the Domain Name violates Section 1125(a). Indeed, it is clear that the Domain Name is being used in a way that is likely to cause confusion or mistake. Internet users looking for plaintiff's site who come across the Domain Name are likely to be deceived into believing that there is an affiliation, connection or association between the Domain Name and plaintiff's goods and services. Moreover, such confusion has already caused damage to plaintiff and will continue to do so.

The Domain Name is continuing to be used to market goods and services that are substantially identical to and competitive with the goods and services that plaintiff offers under the Mark. (Compl. ¶ 20.) The minimal differences between the site associated with the Domain Name and plaintiff's site merely

---

[5] Additionally, 15 U.S.C. § 1125(c)(1) further provides that "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences uses of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1).

9

serves to further deceive customers and harm plaintiff. Additionally, registrant has engaged in a pattern of bad faith registration and use of domains by acquiring multiple domain names which it knows to be identical or confusingly similar to the marks of others that are distinctive at the time of registration of such domain names. (Compl. ¶¶ 40-41.)

Because plaintiff has sufficiently demonstrated that the registration and use of the Domain Name violates 15 U.S.C. § 1125(a), plaintiff is entitled to the requested relief of the transfer of ownership of the Domain Name. Accordingly, the Court need not address the requirements of Section 1125(c).

## IV. RECOMMENDATION

For the reasons outlined above, the undersigned Magistrate Judge recommends that default judgment be entered in favor of plaintiff with respect to Domain Name <metropark.net> for violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(a).

Under 15 U.S.C. § 1125(d)(2)(D), plaintiff's remedies include forfeiture, cancellation, or transfer of the domain name to the owner of the mark. Plaintiff asks that VeriSign, Inc., as the operator of the registry of the <metropark.net> domain name (the "Domain Name") be directed to transfer the Domain Name from the current registrar, Moniker Online Services, LLC, to a domain registrar of plaintiff's selection, and that such

selected registrar shall thereafter register the Domain Name in the name of plaintiff and provide plaintiff with full control of the Domain Name. The undersigned recommends that such relief be granted.

V. <u>NOTICE</u>

The parties are advised that exceptions to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. A failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

/s/
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

July 8, 2010
Alexandria, Virginia